GRIFFIN, Circuit Judge,
concurring in the judgment.
Plaintiff alleges that the American Bar Association (ABA) has monopolized the law school entrance exam market. As the entity that controls the accreditation of every law school in this country, the ABA compels every law school applicant to take a “valid and reliable” entrance exam, while at the same time conferring the “valid and reliable” label to one test, and one test only — the LSAT. Unfortunately, it appears that a portion of the LSAT is unfairly discriminatory toward the blind and visually impaired. That puts plaintiff and all other blind people seeking to attend law school at a distinct disadvantage, both while taking the test and while competing with other applicants in the admissions process. Plaintiff has asked law schools to waive the requirement that he take the LSAT and submit his score as part of his application; they have refused, plaintiff claims, for fear the ABA would revoke their accreditation. This is the sum and substance of the allegations in plaintiffs complaint.
Contrary to the majority’s ruling, I conclude that taken together these allegations form the necessary elements of Article III standing for plaintiffs claims against the ABA. Being required to take an unfairly discriminatory exam and submit it as part of a law school application is a judicially cognizable injury; that injury is fairly traceable to the ABA, which compels, without exception, that law schools require applicants to submit that exam score; and that injury is likely to be redressed through a judicial decision holding the entity’s requirement unlawful. Because the majority concludes otherwise, I respectfully disagree with Section II.A of the majority opinion.
The standing issue aside, I agree with my colleagues that plaintiffs allegations do not state a claim for relief under Titles III and V of the Americans with Disabilities Act. Therefore, I join Section II.B of the majority opinion and concur in the judgment.
I.
The ABA governs the accreditation of law schools in this country. To become and remain accredited, law schools must comply with certain standards promulgated by the ABA. One of those standards is Standard 503. It states that “[a] law school shall require each applicant for admission as a first year J.D. student to take a valid and reliable admission test to assist the school and the applicant in assessing the applicant’s capability of satisfactorily completing the school’s educational program.” According to the ABA, only one test is *350 presumptively “valid and reliable” for purposes of Standard 503 — the Law School Admission Test (LSAT). Law schools that wish to use a different test must persuade the ABA that it is “valid and reliable.” However, that option (known as a “variance”) is only available on a programmatic basis, not for individual applicants. Law schools are free to give whatever weight they choose to an individual applicant’s LSAT score, but they are prohibited from waiving the examination requirement for any applicant. The net result of the ABA’s standards is this: virtually every American law school — though they may give whatever weight they choose to an individual’s score — requires each applicant to submit an LSAT score as part of his or her application.
The LSAT contains a significant number of questions that require spatial reasoning and encourage diagramming of visual concepts. As a blind person, plaintiff is unable to conceive of spatial relationships. He is therefore at a distinct disadvantage in taking this portion of the test. Plaintiff alleges that his experience answering these discriminatory questions also negatively affects his performance on the remainder of the exam. Plaintiff has applied to three law schools, but has been denied admission as a result of his poor LSAT performance. In at least one instance, he tried to obtain an LSAT waiver, but could not “as a result of Standard 503.”
In response, plaintiff brought this action against the ABA, alleging that Standard 503’s prohibition on individual exam waivers violates Titles III and V of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12189 and 12203(b), respectively. The district court dismissed plaintiffs complaint on two alternative grounds: (1) failure to establish Article III standing, and (2) failure to state a claim for relief. I agree with the majority that the district court properly dismissed plaintiffs complaint for failure to state a claim. However, for the reasons that follow, I cannot join its conclusion that plaintiff lacks standing.
II.
The irreducible minimum of Article III standing has three elements. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, the plaintiff must have suffered a concrete and particularized injury-in-fact that is either actual or imminent, as opposed to conjectural or hypothetical. Fieger v. Michigan Supreme Court, 553 F.3d 955, 962 (6th Cir. 2009). Second, the plaintiffs injury must be “fairly traceable” to the challenged action of the defendant. Id. And third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Id.
In evaluating plaintiffs standing at the pleading stage, we must confine ourselves to the four corners of the complaint, Parsons v. U.S. Dep’t of Justice, 801 F.3d 701, 706 (6th Cir. 2015), we must accept as true all material allegations relating to the elements of standing, Kardules v. City of Columbus, 95 F.3d 1335, 1346 (6th Cir. 1996), and we must construe the complaint in plaintiffs favor, Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). My basic disagreement with the majority is that it fails to observe this standard of review and, in so doing, misapplies the second and third elements of standing.
A.
The injury-in-fact prong of the standing doctrine requires that a judicially cognizable harm have already occurred or be likely to occur “imminently.” Parsons, 801 F.3d at 710. “At the pleading stage, general factual allegations of injury resulting from the defendant’s conduct may suffice, *351 for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.” Defs. of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130 (internal quotation marks and brackets omitted).
Plaintiffs legal theory is that the ABA discriminates against blind law school applicants by compelling law schools to require all applicants submit an LSAT score, without the option of waiving the requirement for certain individual applicants. Plaintiff alleges that he is harmed by having to sit through a discriminatory examination and by having to submit the results as part of his law school application. These are particularized injuries judicially cognizable under our standing jurisprudence. See, e.g., Gratz v. Bollinger, 539 U.S. 244, 262, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (inability to compete on equal footing with other applicants a cognizable injury-in-fact); Allen v. Wright, 468 U.S. 737, 757 n. 22, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (“[S]tigmatic injury ... is judicially cognizable to the extent that [the plaintiff is] personally subject to discriminatory treatment.”). Plaintiff also alleges that he wishes to reapply to law school free of the requirement that he submit an LSAT score, thereby establishing an “imminent” harm for purposes of seeking prospective relief. See Gratz, 539 U.S. at 262, 123 S.Ct. 2411 (holding that allegation that applicant is “able and ready” to reapply is sufficient to establish standing to seek prospective relief); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (rejecting the proposition that the plaintiffs conditional averments were “speculative ‘some day’ intentions”). Therefore, as the majority appears to agree, plaintiff has satisfied the first element of standing.
B.
The second element of standing — the so-called “causation” element — requires a plaintiff to show that his injury is “fairly traceable” to the defendant’s challenged action. Fieger, 553 F.3d at 962. In cases in which a plaintiff is harmed by the regulation of a third party, where causation will “hinge on the response of the regulated (or regulable) third party,” he or she must “adduce facts showing that those choices have been or will be made in such manner as to produce causation.... ” Defs. of Wildlife, 504 U.S. at 562, 112 S.Ct. 2130.
Plaintiffs two-fold injury is that he must sit through a discriminatory test and must apply to law schools at a competitive disadvantage because he is required to submit the results of a test that is inherently discriminatory toward blind people. In order to establish that these injuries are traceable to the ABA, plaintiffs complaint must allege that he requested an LSAT waiver from a law school, but that the school denied his request because of Standard 503. Paragraph 25 of his complaint does just that:
Plaintiff has endeavored in the past to obtain an LSAT .waiver from one or more law schools to which he has applied but to date has been unable to secure a waiver as a result of Standard 503 promulgated by the American Bar Association.
Even more to the point, Paragraph 27 alleges:
As a direct and proximate result of the Defendant’s actions in implementing Standard 503, the Plaintiff is unable to request a reasonable accommodation'in the form of an LSAT exemption or waiver, and instead will continue to be damaged by the Defendant’s requirement that he take a discriminatory exam.
These allegations are more than sufficient to satisfy the second element of the stand *352 ing inquiry, as they draw a connection between plaintiffs injury — being required to take a discriminatory exam and submit the results as part of his application — and defendant’s challenged conduct — Standard 503’s rigid requirement that law schools require each applicant to submit an LSAT score or else face sanctions or loss of accreditation.
The ABA counters that, because Standard 503 refers only to “a valid and reliable test,” it does not compel any law school to require the LSAT, per se. This is sophistry. The ABA’s own Interpretation 503-1 confers presumptive validity and reliability to the LSAT only, and it requires schools to prove the efficacy of any alternative test. Moreover, to use an alternative test, law schools must seek a “variance,” which is only available on a’programmatic basis. Thus, for purposes of plaintiffs claim regarding individual waivers, Standard 503 effectively compels law schools to require the LSAT.
The ABA also argues that Standard 503 does not dictate how much weight law schools must give to an applicant’s LSAT score, and therefore law schools can give it no weight at all, amounting to a de facto individual waiver. This misperceives plaintiffs injury, which is being required to take the LSAT in the first place. Furthermore, plaintiff is still at a competitive disadvantage in having to submit his results, as law schools are required to report each admitted applicant’s score, regardless of the weight attributed to it, for purposes of admissions statistics and rankings.
The majority takes a tack similar to the ABA. It reasons that plaintiff cannot establish causation against the ABA because his injuries are more attributable to the law schools and the creator of the LSAT, the Law School Admission Council (LSAC). It is certainly true that the LSAC and law schools play a role in plaintiffs admission process. But standing is not a zero-sum game. Nor is it limited to the first link in the chain of causation. Lexmark Int’l, Inc. v. Static Control Components, Inc., - U.S. -, 134 S.Ct. 1377, 1391 n. 6, 188 L.Ed.2d 392 (2014) (stating that standing is not a question of proximate cause). The ABA may not be solely responsible for plaintiffs injuries, but constitutional standing requires only that an injury be “fairly traceable,” not “solely traceable,” to the defendant’s challenged action.
The majority’s “solely traceable” approach to causation is out of sync with our standing jurisprudence. Perhaps the starkest example of this incongruity is our recent decision in Parsons, 801 F.3d 701. In that case, a group of plaintiffs challenged the Department of Justice’s (DOJ’s) designation of them as a “hybrid gang” in a report disseminated to local law enforcement agencies. Id. at 707. The plaintiffs sued the DOJ, alleging that local law enforcement interfered with their constitutional rights in the wake of the DOJ’s designation. The district court dismissed the case for lack of standing, holding that plaintiffs could not establish causation because the local law enforcement officials “exercised independent judgment in committing the alleged injuries.” Id. at 713. This court reversed. We observed that the plaintiffs had alleged that local law enforcement officials took adverse actions against them “based on” the DOJ’s designation. Id. at 713-14. We held that “by stating that the law enforcement officials themselves acknowledged that the DOJ gang designation had caused them to take the actions in question,” the plaintiffs had sufficiently traced their injuries to the DOJ’s designation. Id. at 714.
This case is indistinguishable from Parsons. The connection between the ABA and plaintiffs injuries may be indirect, *353 much like the connection in Parsons. But, “the fact that an injury is indirect does not destroy standing as a matter of course.” Id. at 713. Parsons makes clear that causation will lie so long as the plaintiff can connect his injury to the challenged action of the defendant. The plaintiffs in Parsons did that by alleging that local law enforcement officials acted “based on” the DOJ’s designation. So, too, plaintiff has alleged that law schools will not grant an individual waiver “as a result of Standard 503.” Accepting that allegation as true (as we must), plaintiff has demonstrated that his injuries are fairly traceable to the ABA’s rule compelling law schools to require the LSAT without the option of individual waivers.
*C.
The third element of constitutional standing is whether “it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Fieger, 553 F.3d at 962. The majority concludes that plaintiffs injury is not likely to be redressed because, even if the court struck down Standard 503, “law schools could still choose to require the LSAT in their admissions process.” The Supreme Court rejected precisely this line of reasoning in Federal Election Commission v. Akins, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).
In Akins, the plaintiffs filed a complaint with the Federal Election Commission (FEC), alleging that the American Israel Public Affairs Committee (AIPAC) was a “political committee” and requesting the FEC to initiate enforcement proceedings against AIPAC. Id. at 13, 16, 118 S.Ct. 1777. The FEC dismissed the complaint on the basis that AIPAC did not meet the statutory definition of “political committee.” Id. at 18, 118 S.Ct. 1777. The plaintiffs sued and the FEC challenged their standing, arguing that, even if it agreed with the plaintiffs that AIPAC was a “political committee,” it still retained the discretionary authority not to initiate proceedings against AIPAC. Id. at 25, 118 S.Ct. 1777. The Supreme Court rejected this argument: “[E]ven though the FEC might [have] reach[ed] the same result exercising its discretionary powers lawfully,” the plaintiffs’ injury was still fairly traceable to the FEC’s decision to dismiss the complaint based on a purportedly incorrect reading of the statute, “for we cannot know that the FEC would have exercised its prosecutorial discretion in this way.” Id. “For similar reasons,” the Court said, “the courts ... can ‘redress’ [the plaintiffs’] ‘injury in fact.’ ” Id.
Akins’ holding is equally applicable here: although a law school may retain the discretionary power to require the LSAT or deny plaintiff admission, “we cannot know that [it] would have exercised its ... discretion in this way.” Id. The fact that law schools may deny him a waiver in their discretion does not mean plaintiffs present injury — the unavailability of waivers altogether — is not redressable by holding Standard 503 unlawful.
In any event, according to plaintiffs complaint, the majority’s prediction is likely wrong. Plaintiff has alleged that at least one law school to which he has applied denied him a waiver “as a result of Standard 503.” Construing this allegation in plaintiffs favor, we must accept that law schools are willing to waive the LSAT score, but are fettered by Standard 503. In other words, plaintiff has alleged that, “absent [Standard 503], there is a substantial probability that ... if the court affords the relief requested, the asserted [injury (the unavailability of waivers) ] will be removed.” Warth, 422 U.S. at 504, 95 S.Ct. 2197. That is all that is required to satisfy *354 the redressability requirement of Article III standing.
The basic thrust of the argument against plaintiff having standing is the notion that plaintiff has somehow sued the wrong party. This is the basis for the majority’s parting legal advice about pursuing other, “more practical” legal remedies against the LSAC. The argument and advice expose the fundamental flaw in the majority’s decision. By repackaging plaintiffs factual allegations into a new légal theory for him, the majority flips the construe-all-allegations-in-plaintiffs-favor standard on its head. See id. at 501, 95 S.Ct. 2197. Indeed, the majority assumes “Binno is [not] seeking to be relieved altogether of the obligation of taking the LSAT,” yet this is precisely the outcome plaintiff wants. Furthermore, it overlooks a critical allegation in plaintiffs complaint — the ABA used to allow law schools to give individual LSAT waivers. This fact dispels the myth that the ABA is not responsible for plaintiffs injuries. It also confirms what the foregoing discussion sought to show: that plaintiffs injury (the unavailability of LSAT waivers) is fairly traceable to Standard 503 and can be redressed through a judicial decision holding it unlawful.
III.
For these reasons, I would hold that plaintiff has established Article III standing to sue the ABA. I therefore respectfully disagree with the majority’s ruling regarding standing. That said, whether plaintiff has Article III standing is a separate question from whether the unavailability of a waiver under Standard 503 violates the ADA. Id. at 500, 95 S.Ct. 2197. On the latter question, I agree with the majority’s analysis of the Title III and Title V claims. I therefore join Section II.B of the majority opinion and concur in the judgment.